UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                      )
JAMES HUNDT,                                          )
                                                      )
            *Plaintiff*,                              )
                                                      )
    v.                                                )
                                                      )
SECRETARY ROBERT WILKIE                               )
U.S. DEPT. VETERANS AFFAIRS                            )
810 Vermont Avenue, NW                                )
Washington, DC 20420,                                 ) Civil No. _____
                                                      )
            *Defendant*.                               )
                                                      )
    Serve:                                            )
                                                      )
    ROBERT WILKIE, SECRETARY                          )
    U.S. DEPT. OF VETERANS AFFAIRS                     )
    810 Vermont Avenue, NW                            )
    Washington, DC 20420                              )
    *-Via Certified Mail*                             )
                                                      )
    U.S. ATTORNEY'S OFFICE FOR THE                    )
    DISTRICT OF COLUMBIA                              )
    Attn: Civil Process Clerk                         )
    U.S. Attorney's Office                            )
    555 4th Street NEW                                )
    Washington, DC 20530                              )
    *-Via Certified Mail*                             )
                                                      )
    U.S. ATTORNEY GENERAL,                            )
    950 Pennsylvania Avenue, NW                       )
    Washington, DC 20530-0001                         )
    *-Via Certified Mail*                             )
_____)

CIVIL COMPLAINT FOR EQUITABLE
AND MONETARY RELIEF AND DEMAND FOR JURY

Plaintiff James Hundt ("Hundt"), by and through undersigned counsel, files this Complaint and demand for jury trial against Defendant Robert Wilkie, Secretary for the United States Department of Veterans Affairs ("Agency") for violations of The Rehabilitation Act of 1973, 29 U.S.C. 791, *et seq.*, ("Rehab Act").

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1331, as there is a federal question that arises under the laws of the United States, specifically 29 U.S.C. § 621, *et seq.*

2.      Venue in this district is appropriate pursuant to 28 U.S.C. § 1391, as the defendant's principal place of business is located within this judicial district and employment records relevant to the unlawful employment practice had been maintained and administered within this judicial district.

## PARTIES

3.      Hundt is a resident of St. Joseph, Michigan, and Hundt has worked for the Agency since in or around April 2013.

4.      Defendant Robert Wilkie is the secretary of the Agency.

## ADMINISTRATIVE EXHAUSTION

5.      Hundt initiated contact with the Agency's Equal Employment Opportunity ("EEO") to file an informal complaint of discrimination on or about July 28, 2017. Hundt filed a formal complaint on or about August 23, 2017, and subsequently amended his original formal complaint several times, on or about October 5, 2017, October 31, 2017, November 9, 2017, May 11, 2018, and again on May 16, 2018.

6.      The Agency's EEO has not yet issued a final agency determination, and it has

surpassed its 180 day deadline to do so.

7.      Because the Agency has surpassed its 180 day deadline, Hundt is entitled to file his complaint before this Court. 29 C.F.R. § 1614.407(b).

## FACTUAL ALLEGATIONS

8.      Hundt is a disabled Army veteran who receives service connected disability compensation from the Agency. Hundt has anxiety, depression, cognitive impairment, and neuro-psychological/seizure disorder, as well as a cognitive impairment from a head trauma that impacts his ability to perform certain tasks and projects as quickly as individuals without a cognitive impairment.

9.      Throughout his tenure as a federal employee, Hundt's disabilities have not affected his ability to perform his job functions successfully and at a high level.

10.      Hundt began working at the Agency in or around April 2013 as a supervisory industrial engineer within the Agency's Veteran Engineering Resource Center ("VERC"), which is part of the Veterans Health Administration ("VHA"). Hundt works remotely for the Agency from Michigan.

11.      Throughout his employment, Hundt repeatedly identified himself in meetings, to his supervisors, and to management as a disabled veteran.

12.      On or around March 2014, the Agency promoted Hundt to associate director of the program management office ("PMO") within VERC.

13.      On or about August 25, 2016, the Agency decided to consolidate the Office of Strategic Integration ("OSI") and VERC, and it named the executive director of OSI Kate Andrews as the acting director of OSI/VERC. The Agency directed Andrews with taking the lead on resolving budget issues within OSI/VERC.

14.     OSI/VERC began having discussions about reducing the number of staff. OSI ultimately took over VERC, and it terminated approximately 127 term VERC employees effective on or about September 30, 2017. OSI replaced the term VERC employees with contractors from Enterprise Resources Performance, Inc. ("EPRi").

15.     Hundt repeatedly raised concerns about violations of law, rules and regulations, as well as gross mismanagement, gross waste of funds, and abuse of authority. He submitted his disclosures, which were protected under the federal Whistleblower Protection Act, internally at the Agency and also externally to the Office of Special Counsel, the VA Office of Accountability and Whistleblower Protection and to Congress. These disclosures included reporting that the replacement of VERC employees with contractors was illegal because senior OSI employees, including Joseph Williams and Marvin Rydberg, who made the decision to replace VERC employees with contractors had close relationships with EPRi's cofounder and previously worked for EPRi. Hundt filed complaints with the Office of Special Counsel both disclosing the wrongdoing and complaining of retaliation.

16.     In or about August 2016, Hundt became concerned about the future of VERC and VERC employees. During and after OSI's takeover of VERC, Hundt began experiencing an increase in his anxiety and depression and also began experiencing suicidal ideations.

17.     On or about November 8 and 15, 2016, Andrews hosted an OSI/VERC town hall meeting where she announced there would be significant losses of VERC employees. VERC employees began complaining about a psychologically unsafe environment where employees were experiencing an increase in mental health issues, including suicidal ideations and suicide attempts.

18.     On or about December 1, 2016, Hundt asked the Indianapolis VERC associate

directors, acting director Matt Jenkins, and OSI human resources representative Peter MacEachern why OSI did not honor a commitment it made to Melissa Register ("Register"), a disabled female combat veteran, to hire her for an open position.  When Hundt advised that the Agency revoking its employment offer to Register was improper, MacEachern began yelling: "I don't give a fuck about that woman.  She means nothing to me."

19.     MacEachern was never counseled or reprimanded for yelling during a meeting: "I don't give a fuck about that woman.  She means nothing to me," in reference to a disabled combat veteran.

20.     On or about December 2, 2016, Andrews announced during a meeting attended by all OSI and VERC employees that there would be significant losses as VERC employees were to be terminated at a date to be determined, and Hundt challenged Andrews' plan to terminate and replace VERC employees.

21.     On or about December 15, 2016, Jenkins issued Hundt a written counseling for voicing concerns during the December 2, 2016 meeting.

22.     Prior to approximately December 15, 2016, Hundt had never received any counseling or discipline in addition to having received positive performance reviews.

23.     On or about January 18, 2017, Hundt emailed Jenkins requesting sick leave, complaining about the work environment and reporting that he is a disabled veteran and is taking sick leave for anxiety.

24.     On or about late April or early May 2017, Hundt began reporting to Marvin Rydberg.

25.     On or about April 21, 2017, during a meeting with VERC associate directors and OSI leadership, VERC national associate director Eva Anderson declared that there existed in the

workplace a "psychologically unsafe environment" based on anxiety, despair, and depression that many VERC employees were experiencing about losing their federal jobs. MacEachern responded that there was "no indication, no basis in fact that any staff feel that this is a psychologically unsafe environment." Hundt opposed MacEachern's statement and reported that VERC employees do believe there was a psychologically unsafe environment and had been complaining about it for months. At the end of the meeting, Anderson advised MacEachern, Rydberg, and Williams that the threat of suicide within VERC was very high and there had been at least two attempted employee suicides.

26.     Thereafter, in or around May or June 2017, and until Hundt stopped working under Rydberg, Rydberg would tell Hundt: "you're not normal," "it's not normal to take so long," and "everyone else would have it done by now" referring to Hundt completing projects and tasks. However, Hundt needed additional time to complete projects and tasks due to his cognitive impairment and had explained to Rydberg that he is "not dumb" and he "just need[s] extra time." When Hundt would ask for additional time, Rydberg gave Hundt even more compressed deadlines.

27.     On or about June 2, 2017, Rydberg and Andrews put Hundt on a detail to an "unclassified set of duties" that removed Hundt's supervisory capacity and instructed Hundt not to have contact with OSI/VERC PMO employees pending an investigation. However, the Agency would not give Hundt any details about the investigation.

28.     Beginning on or about June 2, 2017, Rydberg began assigning Hundt technical work that Hundt did not have the technical experience, training, or education to complete. Hundt repeatedly explained to Rydberg what his qualifications are and what skills he has, and what skills and what type of work he cannot perform. Nevertheless Rydberg continued to assign

Hundt work that required technical expertise beyond Hundt's skillset.

29.     Beginning in or around June 2017, and until Hundt stopped working under Rydberg, Rydberg harassed Hundt concerning requests for sick leave and required Hundt provide a medical note each time Hundt took more than three consecutive days of sick leave for his disabilities.

30.     Moreover, Rydberg routinely told Hundt his medical notes were insufficient and required him to get new medical notes in order to take sick leave. However, Rydberg did not require other employees to provide a medical note each time they took sick leave for more than three consecutive days. Accordingly Hundt repeatedly complained to Rydberg that Rydberg was harassing Hundt for taking sick leave.

31.     Maura Catano became acting director of OSI/VERC on or about July 5, 2017.

32.     In or around July 2017, Rydberg continued to assign Hundt to projects and tasks that Hundt did not have the requisite technical experience and skills to complete, including the Pulse and Return on Investment projects. Hundt continued to advise Rydberg that Hundt did not have the requisite technical experience and skills to complete the projects Rydberg was assigning him and continued to request training to address the problem.

33.     On or about July 17, 2017, Hundt emailed Rydberg and advised that he was a "100% disabled veteran" with a cognitive impairment and suffering from anxiety and depression. Hundt further reported that Rydberg harasses Hundt and continues to assign work that Hundt was unqualified to do despite receiving multiple explanations about Hundt's skills.

34.     In or around July 2017, Hundt requested training on SharePoint to complete a project. In response, Rydberg told Hundt to watch Google videos or search YouTube for guidance.

35.     On or about July 27, 2017, OSI/VERC announced that all VERC term employees, except industrial engineers, would be terminated on or about September 30, 2017.

36.     On or about July 28, 2017, Hundt initiated the EEO process and complained that the Agency, including Rydberg, was discriminating against him on the basis of his disabilities.

37.     The EEO interviewed Rydberg as part of the informal complaint process, and on or about July 28, 2017, Hundt advised the Agency's reasonable accommodation coordinator, Terri Donovan, that he needed help getting training because Rydberg continued to assign tasks that Hundt did not have the qualifications or skills to perform. In response to Hundt's request for help getting a reasonable accommodation, Donovan notified Hundt that reasonable accommodations are only to accommodate employees with disabilities.

38.     After Hundt initiated the EEO process, Rydberg began offering training to Hundt, but at too accelerated pace or for training that was inappropriate, such as training that was too technical or training that was at the expert level rather than at an introductory level.

39.     On or about August 15, 2017, Hundt told Rydberg he was requesting additional training time as an accommodation for his disability, and Hundt requested all training that other employees received. Hundt advised Rydberg that he has: "been undergoing intense medical care with increasing doses of medication. I see a counselor weekly and my physician regularly."

40.     On or about August 16, 2017, Rydberg sent Hundt information on reasonable accommodations and a reasonable accommodations request form.

41.     On or around August 2017, Hundt and his physician completed the reasonable accommodations form and sent it to Donovan. Neither Donovan nor the Agency's Accommodations Office ever contacted Hundt about his request for a reasonable accommodation.

42.     On or about August 16, 2017, Hundt emailed Rydberg explaining there had been a lot of focus on what Hundt was not able to do, and Hundt requested Rydberg reframe the focus to be on what Hundt was capable to do, how they could successfully work together, and how Hundt could positively contribute to the Agency.

43.     On or about August 18 and 22, 2017, Hundt applied for GS-14 supervisory program specialist and program specialist positions.  Hundt was never interviewed for either position despite his superior qualifications to the applicants and selectees.

44.     On or about August 23, 2017, Hundt filed a formal EEO complaint.

45.     On or about August 28, 2017, Rydberg assigned all his subordinates to report through their chain of command for any leave requests, except for Hundt, for the duration of Rydberg's leave. Rydberg instructed Hundt to submit any leave requests to Williams, who was outside Hundt's chain of command.

46.     On or about August 29, 2017, Hundt learned the Agency sent out an announcement to all VERC employees, except him, regarding jobs for disabled veterans.

47.     On or about August 28, 2017, Hundt submitted a leave request to Williams requesting leave in conjunction with his lunch on August 29 and 31, 2017, for EAP counseling and to complete EEO paperwork.  Williams responded to Hundt's leave request email with multiple questions.  Williams never responded approving or denying Hundt's leave request, and as a result, Hundt did not take leave.  Williams later claimed that by asking questions he indicated approval.  However, Williams always explicitly approved or denied leave for all other employees or listed employees as AWOL for taking leave without approval.

48.     On or about August 31, 2017, Hundt emailed Catano and reported that he was a disabled veteran and that Williams did not approve his leave despite Williams knowing that

Hundt was "receiving counseling and medication for stress, anxiety and depression" resulting in Hundt having to miss his appointments. Hundt also reported to Catano: "I am being harassed. This is a hostile work environment."

49.     In or around September 2017, Rydberg pressured Hundt to complete program management training courses 1 and 2 quickly. After Hundt told Rydberg he was having difficulty comprehending the work, Rydberg told Hundt that a normal person should complete the course in twenty hours. Rydberg instructed Hundt to complete the courses by September 25, 2017. When Hundt asked for an accommodation for additional time to complete a one week program management course, Rydberg denied an accommodation stating: "it will not be reasonable to lower the standards."

50.     On or about September 6, 7, and 8, 2017, Hundt emailed Rydberg asking for help and declaring he was "in a bad position mentally."

51.     On or about September 20 and 29, 2017, Hundt learned he was not selected for the supervisory program specialist and program specialist positions despite his qualifications. Williams and Catano were the selecting officials for those positions and had knowledge of Hundt's disabilities and EEO complaint.

52.     On or about September 21 and 22, 2017, Rydberg interviewed Hundt as part of an Administrative Investigative Board into Hundt.

53.     On October 5, 2017, Hundt amended his EEO complaint.

54.     On or about October 20, 2017, Catano notified Hundt that she was proposing his removal, which was ultimately stayed pending investigation into Hundt's OSC complaints of whistleblower retaliation.

55.     On or about October 31, 2017, Hundt amended his EEO complaint.

10

56.     On or about October 31, 2017, the Agency notified Hundt that the Office of Inspector General was investigating Hundt.

57.     On November 9, 2017, Hundt amended his EEO complaint.

58.     On or about November 17, 2017, Catano instructed Hundt to not send emails to all or a majority of OSI/VERC employees.

59.     On or around December 2017, Rydberg gave Hundt one work week to complete the Department of Defense's program management training even though individuals are typically given 12 times as much time (60 days) to complete the training. Rydberg denied Hundt's request for additional time as an accommodation for his disabilities, and as a result Hundt failed the course a second time. Hundt complained to Rydberg that Rydberg was purposefully giving Hundt strict deadlines in order to set Hundt up to fail knowing that Hundt is "a 100% disabled veteran with a head trauma" and with a learning disability, that Rydberg was frustrated that Hundt has disabilities, that Rydberg "declare[d] that my [(Hundt's)] head trauma makes me [(Hundt)] not normal," and that Rydberg continued to harass Hundt.

60.     On or about December 21, 2017, Catano notified Hundt that effective January 2, 2018, Hundt would be reassigned to work under Will Jordan.

61.     Since beginning to work under Jordan, Hundt has not experienced the discrimination, harassment, and retaliation he experienced under Rydberg regarding assignments and projects, training, leave requests, denial of additional time to complete assignments, and comments regarding his disabilities. As a result, Hundt has been able to successfully complete all tasks assigned to him under Jordan.

62.     On April 28, 2018, the Agency issued Hundt a no contact order and told Hundt not to have contact with all OSI/VERC employees except Catano and Jordan.

63.     On May 11, 2018, Hundt amended his EEO complaint.

64.     On May 15, 2018, Catano issued Hundt a notice of proposed removal.

65.     On May 16, 2018, Hundt amended his EEO complaint.

66.     On August 8, 2018, the OIG issued its report stating that Hundt misused time and equipment to start a privately owned business and solicited his subordinate staff to join this business.

## COUNT I
### Disability Discrimination
### 29 U.S.C. § 791, *et seq.*

67.     Hundt incorporates the allegations in the forgoing paragraphs as though alleged herein.

68.     The Agency is an executive agency as contemplated by 29 U.S.C. § 794(a).

69.     Hundt is an employee of the Agency.

70.     Hundt has disabilities as defined by 29 U.S.C. § 705(9) and 42 U.S.C. § 12102(1) including anxiety, depression, cognitive impairment, and neuro-psychological/seizure disorder.

71.     Hundt's disabilities affect the major life activities of working, learning, reading, concentrating, and thinking as defined by29 U.S.C. § 705(20)(B) and 42 U.S.C. § 12102(2).

72.     Hundt is a qualified individual with a disability who can perform the essential functions of his job with or without reasonable accommodations.

73.     The Agency, including Rydberg and Catano, unlawfully discriminated against Hundt because of his disabilities when it treated Hundt differently than employees without disabilities by initiating AIB and OIG investigations into Hundt, reassigning Hundt to a detail, requesting Hundt provide medical documentation for sick leave requests, denying Hundt training, assigning Hundt inappropriate projects and tasks, proposing to remove Hundt, denying

Hundt promotions, denying Hundt's requests for accommodations, and making comments about Hundt's disabilities.

74.    The Agency's stated and forthcoming reasons are false and are pretext for unlawful discrimination.

75.    Hundt has suffered damages as a result of the Agency's unlawful acts.

### COUNT II
### Failure to Accommodate
### 29 U.S.C. § 791, *et seq.*

76.    Hundt incorporates the allegations in the forgoing paragraphs as though alleged herein.

77.    The Agency is an executive agency as contemplated by 29 U.S.C. § 794(a).

78.    Hundt is an employee of the Agency.

79.    Hundt has disabilities as defined by 29 U.S.C. § 705(9) and 42 U.S.C. § 12102(1) including anxiety, depression, cognitive impairment, and neuro-psychological/seizure disorder.

80.    Hundt's disabilities affect the major life activities of working, learning, reading, concentrating, and thinking as defined by 29 U.S.C. § 705(20)(B) and 42 U.S.C. § 12102(2).

81.    Hundt is a qualified individual with a disability who can perform the essential functions of his job with or without reasonable accommodations.

82.    Hundt repeatedly requested reasonable accommodations, including training and additional time to complete assignments.

83.    The Agency denied Hundt reasonable accommodations and failed to engage in the interactive process.

84.    Hundt has suffered damages as a result of the Agency's unlawful discrimination.

**COUNT III**
**Retaliation**
**29 U.S.C. § 791, *et seq.***

85.     Hundt incorporates the allegations in the forgoing paragraphs as though alleged herein.

86.     The Agency is an executive agency as contemplated by 29 U.S.C. § 794(a).

87.     Hundt is an employee of the Agency.

88.     Hundt engaged in protected activity under The Rehab Act when he complained to the Agency, including to Rydberg and Catano, and the EEO that he was being discriminated against and harassed on the basis of his disabilities.

89.     The Agency, including Rydberg, Catano, and Williams, all had knowledge of Hundt's protected activity, including his EEO complaint.

90.     The Agency, including Rydberg, Catano, and Williams, took adverse actions against Hundt after learning of his protected activity by initiating an OIG investigation into Hundt, requesting Hundt provide medical documentation for sick leave requests, denying Hundt training, assigning Hundt inappropriate projects and tasks, proposing to remove Hundt, denying Hundt promotions, and denying Hundt's requests for accommodations.

91.     The Agency's stated and forthcoming reasons are false and are pretext for unlawful retaliation.

92.     Hundt has suffered damages as a result of the Agency's unlawful retaliation.

**COUNT IV**
**Hostile Work Environment**
**29 U.S.C. § 791, *et seq.***

93.     Hundt incorporates the allegations in the forgoing paragraphs as though alleged herein.

14

94.     The Agency is an executive agency as contemplated by 29 U.S.C. § 794(a).

95.     Hundt is an employee of the Agency.

96.     The Agency subjected Hundt to a hostile work environment by initiating AIB and OIG investigations into Hundt, reassigning Hundt to a detail, requesting Hundt repeatedly provide new medical documentation for sick leave requests, repeatedly denying Hundt training, repeatedly assigning Hundt inappropriate projects and tasks, proposing to remove Hundt, denying Hundt promotions, repeatedly denying Hundt's requests for accommodations, and making repeated comments about Hundt's disabilities.

97.     The Agency's actions were both severe and pervasive.

98.     The Agency's stated and forthcoming reasons are false and are pretext for unlawful discrimination.

99.     Hundt has suffered damages as a result of the Agency's unlawful acts.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff James Hundt respectfully requests that the Court enter judgment in his favor and award legal and equitable relief, including but not limited to:

a.  Economic damages;

b.  Compensatory damages;

c.  Liquidated damages;

d.  Injunctive relief;

e.  Reasonable attorneys' fees and costs; and

f.  Any other relief this Court may deem just and equitable.

## JURY DEMAND

Plaintiff demands a jury for all issues proper to be so tried.

Respectfully  submitted,


/s/
R. Scott Oswald, DC Bar 418859
Adam Augustine  Carter, DC Bar 437381
The Employment  Law Group, P.C.
888 17th Street, N.W., Suite  900
Washington,  D.C. 20006
(202) 261-2813 (telephone)
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
acarter@employmentlawgroup.com
*Counsel for Plaintiff*